"Polaroid," was not a disclosure of circular polarizing material, the use of which both parties state in their applications solved the problem of suppressing phantom or false signals; that appellants did not disclose to appellee the involved invention; and that appellants' disclosure was not of such character that it would enable one skilled in the art of light polarization to solve the problem of suppressing phantom or false signals without the exercise of the inventive faculties.

It appears from the testimony of the witness Kriebel that during the summer of 1937 neither the Polaroid Corporation nor its predecessors ("Land-Wheelwright Laboratories or Sheet Polarizer Company") were selling or offering for sale *circular polarizing material;* that ordinary *plane polarizing material* was the only polarizing material then being sold or offered for sale by the Polaroid Corporation or its predecessors; that it was sold under the trade-mark "Polaroid"; that such *plane polarizing material* could not be used successfully to suppress phantom or false signals; and that in order to solve the problem confronting the parties it was necessary to use *circular polarizing material,* which, as hereinbefore stated, means *plane polarizing material combined with a double-refractory or quarter-wave element.* Furthermore, it appears from appellants' specification that the plane polarizing material or sheet is "procurable on the market under the commercial name 'polaroid' "; and that the quarter-wave or double-refractory element "may be a Fresnel rhomb or any suitable double refracting material which gives a quarter wave retardation to one component of the beam with respect to the other component."

It would seem to be evident from what has been said that the disclosure in appellants' letter of August 2, 1937, of "Polaroid" is not a disclosure of the polarizing material which the parties agree solved the problem of suppressing phantom or false signals in railway signaling devices. Furthermore, we think it is clear from the record that appellants had no conception on August 2, 1937, of the kind of polarizing material necessary to solve the problem. Nor are we able to say, on the record presented, that upon the suggestion of the use of "Polaroid," it would be obvious to one skilled in the art that circular polarizing material, such as is defined in both appellants' and appellee's applica-

tions, would suppress phantom and false signals.

We hold, therefore, that appellee is an original inventor of the subject matter defined by the involved counts, and that appellants are not entitled to the benefit of the work performed and the success achieved by appellee. See King v. Burner, 90 F.2d 343, 24 C.C.P.A., Patents, 1312; Raiche v. Foley, 113 F.2d 497, 27 C.C.P.A., Patents, 1380.

It clearly appears from the record that appellee conceived the invention on September 27, 1937; that he reduced it to practice at least as early as November 19 of that year; and that it was not until after appellee's reduction to practice that appellants had a conception of the invention. That being so, it is unnecessary that we consider other arguments presented here by counsel for appellants.

We are in agreement with the conclusion reached by the tribunals of the Patent Office.

The decision of the Board of Appeals is affirmed.

Affirmed.

29 C.C.P.A. (Patents)

## In re WARE.

### Patent Appeal No. 4629.

Court of Customs and Patent Appeals.

June 15, 1942.

Fred Gerlach and Norman H. Gerlach, both of Chicago, Ill. (Miles D. Pillars, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

Appellant brings before us for review the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner rejecting three claims, numbered, respectively, 1, 6, and 38, of appellant's application for a patent for a composition of matter claimed to have special utility in the manufacture of abrasive discs. As taken, the appeal covered a fourth claim, numbered 37, but at the hearing before us appellant moved to dismiss the appeal as to that claim, which motion will be granted. Nine claims were allowed by the examiner which, of course, are not involved here.

We quote claim 6 as illustrative of the appealed claims: "6. As a new composition of matter, a mixture of a relatively small amount of low ratio sodium silicate solution embodying no more than two parts of silica to one part of sodium oxide and a greater amount of high ratio sodium silicate solution embodying more than two parts silica to one part sodium oxide, an extremely small quantity of a wetting agent capable of reducing the surface tension of the mixture, and *a body forming agent* which chemically reacts with the mixture to form a hard bonding heat resisting material." (Italics ours.)

It will be noted that we italicize the phrase "a body forming agent" in the claim. This is a limitation common to each of the three claims before us and formed the basis of their rejection, it being held, in effect, that in the absence of a specific designation in the claims of the elements composing the body forming agent they are so broad that they fail to properly point out the invention as required by the statute. R.S. § 4886, 35 U.S.C.A. § 31.

While a number of patents were cited by the examiner and the board for the purpose of showing the state of the prior art, the rejection of the claims at issue was not based upon them and it is unnecessary to list or discuss them here.

In appellant's specification as filed, it was stated that an element of the composition included "a chemically active body forming agent in the form of an admixture of aluminum silicate, silica, calcium carbonate, or magnesium silicate," and he was allowed claims of the "Markush" type (such as those numbered 12 and 17 in the application) which defined the body forming agent as being "selected from the group" of materials so specifically named.

The claims on appeal are generic claims. Broadly, they cover any and all "body forming agent[s]" which will chemically react with the mixture of low and high ratio sodium silicate solutions (as defined in the claim before us) to form a hard bonding heat resisting material.

It is urged on behalf of appellant, in substance, that he is entitled to claims of

that breadth notwithstanding his failure to teach that any agents, or elements, other than those specifically named had been invented or discovered by him which would produce a chemical reaction with the result described. In this connection our attention is directed to an original claim (numbered 1) of appellant's application which, quoting from his brief, calls for "a mixture of low ratio sodium silicate solution embodying no more than two parts silica to one part sodium oxide and a high ratio sodium silicate solution embodying more than two parts silica to one part sodium oxide, and *a body forming agent chemically reactive with the mixture.*" (Italics quoted.)

The brief asserts that the foregoing "conclusively establishes that appellant did not intend to restrict himself to any particular chemically reactive body forming agent or group of agents," and the familiar principle that an original claim in an application is as much a part of the disclosure as the specification itself is invoked.

■ It is sufficient to say of the principle, or rule, so invoked that its soundness is always recognized by the Patent Office and the courts, but that it applies to the *disclosure* and not to the *intent* of an applicant. We may assume that appellant here originally desired and intended to cover all agents or group of agents which would form a body chemically reactive in the manner described in the claim, but his *desire* and *intent* did not teach those skilled in the art anything. The teaching in that respect was confined to the disclosure.

In the brief and in the oral argument before us counsel for appellant stressed the suggestion that the real value of his invention lies in the combination of the low ratio sodium silicate solution and the high ratio sodium silicate solution, and argued that the patent might be avoided by using a body forming a chemically reacting agent composed of elements different from those named in the allowed claims.

■ This court, in considering the patentability of claims, is not concerned with questions relating to infringement, nor is it incumbent upon us to suggest a manner in which claims might be drawn. We consider claims as they come to us.

It is obvious that appellant seeks in the appealed claims to obtain protection upon matter of possible utility but not disclosed by him in his application so that those skilled in the art would be taught its use.

■ In the course of our decision in the consolidated cases of In re Dreshfield, 110 F.2d 235, 240, 27 C.C.P.A., Patents, 1013, we said: "It is well settled that in cases involving chemicals and chemical compounds which differ radically in their properties it must appear in an applicant's specification 'either by the enumeration of a sufficient number of the members of a group or by other appropriate language, that "the chemicals or chemical combinations"' included in the claims are capable of accomplishing the desired result. In re Steenbock, 83 F.2d 912, 23 C.C.P.A., Patents, 1244, and cases therein cited."

In the Steenbock case cited in the foregoing decision the rule was stated as being applicable in both chemical cases and cases involving composition of matter. See also In re Wahlforss et al., 117 F.2d 270, 28 C.C.P.A., Patents, 867.

■ We are unable to find any teaching or suggestion in appellant's specification that any substances other than the four specifically named in certain of the allowed claims would be suitable for a body forming agent which would chemically react with the combination of a low ratio sodium silicate solution and a high ratio sodium silicate solution to form a hard bonding heat resisting material.

It may be said that appealed claim No. 38 is not only of greater breadth than the claims which were allowed, but is broader than the other appealed claims. This was specifically noted in the decision of the examiner who pointed out that claim 38 "is not limited in any way as to relative proportions of low and high ratio sodium silicate mixture."

We deem it not improper to say that there may be chemical equivalents of the materials specifically named by appellant which, upon a proper showing, would be recognized in an equity proceeding involving infringement so that appellant would be protected by the allowed claims as to use of such equivalents, but that is a matter which may not properly be considered on the question of the patentability of the appealed claims.

It is our view that the decisions below were correct.

An affidavit was filed in this case during its prosecution in the Patent Office which the examiner, as appears from his

decision, considered. Apparently it relates to the question of operativeness which was never challenged. No question concerning it was raised in the appeal to the board, nor is it mentioned in the reasons of appeal to us.

The appeal is dismissed as to claim No. 37, and the decision of the board as to claims 1, 6, and 38 is affirmed.

Affirmed.

29 C.C.P.A.(Patents)

## In re CLARK.

### Patent Appeal No. 4539.

Court of Customs and Patent Appeals.

June 15, 1942.

E. Clarkson Seward and W. Saxton Seward, both of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 13 to 18, inclusive, in appellant's application for a patent for an alleged invention relating to improvements in "drive belting."

The alleged invention is sufficiently described in the appealed claims of which claims 13 and 18 are illustrative. They read:

"13. In a drive belt, having a body, crepe rubber formed integral therewith to prevent slipping.

"18. Drive belting comprising a body of strain-resisting material having one side thereof provided with a thin coating of crepe rubber that is intimately united by adhesion to the body, and is so thin with relation to the thickness of the body as not substantially to decrease the flexibility thereof, whereby a driving surface is provided that prevents either longitudinal or lateral slippage of the belting on its pulleys without adhesion of the belting to the surface of the pulleys against separation therefrom."

The references are: Cutler, 1,479,497, Jan. 1, 1924; Allan (British), 221,672, Sept. 18, 1924; Covey, 1,896,574, Feb. 7, 1933; Crush, 2,057,419, Oct. 13, 1936.

In rejecting the appealed claims, the Primary Examiner relied upon all of the references cited.

The patents to Covey and Cutler, which are not in the record before us, apparently relate, as stated by the tribunals of the Patent Office, to the use of crepe rubber for tires and soles of shoes, respectively. Owing to the fact, however, that we held in the case of In re Covey, 63 F.2d 982, 20 C.C.P.A., Patents, 962, that the use of crepe rubber for the tread of tires was not analogous to the use of such rubber for soles of shoes, the Board of Appeals, in its decision, stated that the Covey and Cutler patents were "improperly applied by the Primary Examiner" in his rejection of the appealed claims. The board, accordingly, relied only upon the patents to Crush and Allan.

The patent to Crush relates to a power transmission belt, and discloses a belt comprising layers of leather and canvas and a layer of rubber applied to the driving surface. The layer of rubber is vulcanized to the layer of canvas. The purpose of the layer of rubber is, as stated by the patentee, to increase the friction between the belt and the pulley and thus prevent slippage.