43 C.C.P.A. Patents.

Carlo V. BOCCIARELLI, Appellant,

v.

Charles E. HUFFMAN, Appellee.

Patent Appeal No. 6181.

United States Court of Customs and Patent Appeals.

April 18, 1956.

Allen V. Hazeltine, Philadelphia, Pa. (Thomas M. Ferrill, Jr., Great Neck, N. Y., Fordyce A. Bothwell, Dexter N. Shaw, Philadelphia, Pa., and William A. Smith, Jr., Washington, D. C., of counsel), for appellant.

Darby & Darby and Russell G. Pelton, New York City (Donald J. Overocker, New York City, of counsel), for appellee.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE and JACKSON (retired), Judges.

O'CONNELL, Acting Chief Judge.

This is an appeal from the decision of the Board of Patent Interferences of the United States Patent Office awarding priority of invention of the subject matter defined by the single count in issue to the senior party Huffman, who is the appellee here. One member of the board concurred specially in its decision, while another member dissented.

The interference involves appellant's application serial No. 198,709 filed December 1, 1950, and appellee's application serial No. 789,296 filed December 2, 1947. The Bocciarelli application is assigned to the Philco Corporation, and the Huffman

application to the DuMont Laboratories, Inc.

The count, originated by the Primary Examiner and suggested to the applicants for the purpose of interference, reads as follows:

"An electron-sensitive target comprising *a supporting surface containing a light-emissive area and a plurality of discrete signal-generating indicia disposed in spaced-apart relationship on said surface* along a marginal edge of said light-emissive area, said light-emissive area comprising a plurality of parallelly disposed groups of phosphor lines, said lines individual to each group being constituted of phosphor materials capable of emitting light of a color component individual to that line, and said signal-generating indicia comprising a plurality of line-segments disposed in spaced apart register with selected ones of said phosphor lines." (Italics added.)

The invention in issue relates to color television apparatus of the type in which a target screen comprising parallel lines of light emissive phosphors of different colors is scanned by an electron beam, the intensity of which is modulated in accordance with intelligence derived from the object being televised and relating to the different colors corresponding to those which the respective phosphors are adapted to produce. The specific improvement here involved is designed to control the scanning to insure that when the beam is modulated by intelligence representative of a particular color, it will impinge upon a phosphor emissive of light of the same color.

The general characteristics of the invention, so far as pertinent, are thus set forth in appellee's brief:

"The invention is for a system for controlling registration of scanning in a cathode ray tube in color television. The screen of the tube which presents the color picture comprises a plurality of lines or stripes of phosphors which, when excited by the electron beam, fluoresce in different respective colors. The novelty comprising the invention involves a control structure positioned adjacent a marginal edge of the phosphor screen, the control structure comprising a plurality of discrete signal generating indicia disposed in spaced apart relationship, and in spaced apart registry respectively with selected ones of the phosphor lines.

"In practice the indicia are connected externally of the tube to suitable circuity to control the position of the electron beam so as to maintain the beam in its correct scanning position to excite the proper color phosphor and thus produce a true color picture. This control structure prevents the beam from accidentally striking the incorrect color phosphor lines during scanning so as to produce what would thus be an incorrect color in the picture." [1]

During the interference proceeding in the Patent Office, the junior party Bocciarelli, in his preliminary statement, alleged no date of invention as early as the filing date of the senior party's application. Bocciarelli was accordingly placed under an order to show cause why judgment on the record should not be entered against him. His response to that order was a motion to dissolve the interference on the ground that the subject matter in issue was not disclosed in Huffman's application, which motion was denied by the Primary Examiner.

No testimony was taken by either party and the interference proceeded to final hearing before the board on the sole is-

---

[1]. The circuity for this control is the subject of an issued patent to Huffman No. 2,530,431, the application for which was copending with the subject application now involved in this proceeding. Alternative structure or arrangements also disclosed in copending applications are the subject matter of issued Huffman patents 2,589,386, 2,670,773, 2,684,454 and 2,673,929. The subject application was one of the same group but issuance of a patent has been delayed because of the subject interference proceeding.

sue as to whether the count of the interference is supported by the Huffman application. The majority of the board agreed with the Primary Examiner that Huffman's application sufficiently discloses the subject matter of the count, and awarded priority to him. In reaching its conclusion the board found it necessary in support of its position to resort to statements contained in original claims of that application.

Huffman's application here involved shows and describes two distinct embodiments of his invention. In the first of these, the light-emissive area is provided by fluorescent material which is coated or a series of parallel conductors and the uncoated ends of the conductors, which extend in prolongation of the coated portions, provide the discrete signal-generating indicia referred to in the count. The conductors extend between and are apparently supported by two rods of insulating material which are shown and described as being located inside the cathode ray tube and along its face. That arrangement, it is apparent, does not provide a supporting surface containing a light-emissive area and signal-generating indicia disposed on said surface.

Huffman's second embodiment is illustrated in a somewhat diagrammatic manner and includes strips of different color emissive materials (phosphors) which, the specification states, may be applied directly on the face of the cathode ray tube. The conductors which form the signal-generating indicia are aligned with the color emissive strips. The drawing does not clearly show, nor does the specification describe, the manner in which these conductors are supported, but it would appear from the general similarity between the illustrations of the two embodiments, that the conductors are supported by an insulating rod which lies between them and the face of the tube.

It is not disputed by appellant that Huffman's application discloses everything set forth in the count except "a supporting surface containing a light-emissive area and a plurality of discrete signal-generating indicia disposed in spaced-apart relationship on said surface." In other words, the italicized portion of the count hereinbefore recited is the critical portion which is here in controversy, and the present appeal is confined to the question of the sufficiency of the disclosure of the Huffman application to include a third embodiment of his invention as defined by the count in issue. If that disclosure is sufficient to support the count, the decision appealed from must be affirmed; otherwise it must be reversed. It is to be noted that the quoted portion of the count, specifying a *supporting* surface, with a light-emissive area and signal-generating indicia disposed *on* said surface, clearly limits the count to a construction in which the latter elements are supported by the surface. In other words, the word "on" is used in the count in the sense of "supported on." That interpretation of the count has been uniformly followed throughout this proceeding and has not been questioned. Any other interpretation would render the word "supporting" as used in the count meaningless.

Certainly there is nothing in the drawing or specification of Huffman's application to suggest that the conductors are or may be supported on the surface of the tube. The specification states that the conductors may be in contact with or embedded in the fluorescent material, but this relates merely to the relationship between the ends of the conductors and the strips of fluorescent material, and does not suggest that the conductors are supported on the surface of the tube.

As we analyze the decision of the Board of Patent Interferences, the three members of that tribunal were in agreement that Huffman's drawing and his specification, apart from the original claims, do not contain a sufficient disclosure to support the count and, in holding that Huffman's application sufficiently supports the count, the majority of the board, as hereinbefore noted, had re-

course to and relied on original claim 6 of that application, which reads as follows:

"A cathode-ray tube having a fluorescent screen and a structure of conducting material on the inside face thereof, said structure being located adjacent said screen and adapted to be operated upon by the beam of said cathode-ray tube."

 It is well settled that the specification of an application may be corrected or implemented by matter contained in an original claim, and that such matter may form as much a part of the disclosure of an application as if it had appeared in the body of the specification. However, as was pointed out in the case of In re Ware, 129 F.2d 552, 29 C.C.P.A., Patents, 1106 the teaching of an original claim in a case like this is confined to what it discloses rather than to what it covers. Thus in the Ware case, it was held that an original claim calling for a body forming agent chemically reactive with a specified mixture did not provide a disclosure supporting a claim later presented and calling for a body forming agent reactive with that mixture to form a hard bonding heat resisting material, since the original claim did not state that the reaction was to be of such a nature as to produce the material specified by the later claim.

██ Moreover, it is not the normal function of a claim to disclose the invention, but to point out the features of novelty in the invention as disclosed in the specification and drawing of the application. Accordingly, if an original claim can be given a reasonable interpretation which will make it readable on what is disclosed in the specification or drawing, it is proper to adopt that interpretation rather than to seek to construe broad language in the claim as a disclosure of other embodiments.

As above noted, the count is limited to a structure in which there is "a supporting surface containing a light-emissive area and a plurality of discrete signal-generating indicia disposed in spaced-apart relationship on said surface." The majority of the board were apparently of the opinion that claim 6 states that the structure of conducting material (corresponding to the signal-generating indicia of the interference count) is "on the inside face" of the tube, and that such statement, when considered together with the specification of the Huffman application, amounts to a disclosure that the structure is supported by the said inside face.

While the primary meaning of "on" implies both contact and support, the word has various other meanings, one of which, according to Webster's New International Dictionary (1923) is "At— indicating simple position, *esp.* with *side, front, north,* and other words denoting a particular side or direction."

██ It is by no means clear that the word "on" is used in Huffman's original claim 6 to mean that the structure of conducting material is in contact with and supported by the inside face of the tube, rather than in the broader sense of meaning simply that the structure is located within the tube and adjacent a face thereof. It is the established practice to accord the claims of an application and the counts of an interference the broadest meaning which they will reasonably support, Andrews v. Wickenden, 194 F.2d 729, 39 C.C.P.A., Patents, 860; In re Craige, Jr., 189 F.2d 620, 38 C.C.P.A., Patents, 1114, and no reason appears for making any exception in the present case.

Huffman, by his use of the word "on" in original claim 6 of his application, no doubt intended to cover all arrangements in which the structure of conducting material is located adjacent the inside face of the tube regardless of the manner in which it is supported. This conclusion is strengthened by the fact that, as above indicated, Huffman's specification and drawings disclose embodiments in which the said structure is located adjacent the inside face of the tube, but none in which it is supported thereon, and that the broad language of original claim 6, even if it could be held

to contain as a latent suggestion the idea of supporting the structure of conducting material on the face of the tube, fails to point out any specific means for accomplishing that result. In the absence of any indication to the contrary, it is proper to conclude that original claim 6 was intended as a broad definition of the invention readable on at least one of the specifically disclosed embodiments, rather than as a disclosure of a different device which is nowise suggested anywhere else in the application.

█ It is noted that Patent Office Rule 83 provides that the drawing of an application "must show every feature of the invention specified in the claims." Accordingly if, as is now contended by Huffman, his original claim 6 was intended as a disclosure of an embodiment not illustrated, it would have been incumbent upon him to provide additional illustration. The fact that he made no offer to do so, and that the examiner failed to require the additional illustration specified by Rule 83, afford a clear indication that both of them construed claim 6, and the other similar original claims, as readable on the illustrated embodiments, rather than as disclosing and claiming matter not illustrated. In other words, the claims in question were regarded as broad claims, readable on what was illustrated and also covering other subject matter not specifically disclosed. Under these circumstances, and in view of the decision in In re Ware, supra, Huffman's original claims do not serve to add to his specification and drawings the specific disclosure necessary to support the count of the interference here involved.

Moreover, counsel for the party Bocciarelli properly calls attention to the fact that Huffman's original claim 10, which contains language identical with that of original claim 6 with respect to the positioning of the structure of conducting material on the inside face of the tube, was amended during the prosecution of the application to add a statement that such structure is in substantially the same plane with the fluorescent screen. If, as is now contended by Huffman, the original language of the claim meant that both the screen and the structure were supported by and in contact with the inside face of the tube, then they would necessarily be in the same plane, and the language added by amendment would be redundant. The fact that the amendment was made, indicates that Huffman did not consider the claim as originally drawn to be limited to a common supporting of the screen and structure on the inside face of the tube.

In the foregoing discussion, it has been accepted that Huffman's original claim 6 calls definitely for a tube having both a fluorescent screen and a structure of conducting material on the inside face of the tube. Actually, however, in the absence of punctuation, even that meaning is not certain. The language of the claim might be equally well construed to mean that only the structure of conducting material is on the inside face of the tube, or that the structure of conducting material is on the inside face of the fluorescent screen, without limitation as to how the screen and structure are positioned with respect to the tube. Neither of those alternative structures is shown or described by Huffman's drawing or specification.

█ We are of the opinion that while Huffman's original claim 6 is undoubtedly broad enough to cover the arrangement of supporting surface, light-emissive area and signal-generating indicia set forth in the interference count, it does not, either alone or in conjunction with the original specification and drawings of the application, disclose such an arrangement. As was said in Brand v. Thomas, 96 F.2d 301, 303, 25 C.C.P.A., Patents, 1053:

> "Lack of clear disclosure is not supplied by a speculation as to what one skilled in the art might do or might not do if he followed the teaching of the inventor. The disclosure should be clearer than to suggest that one skilled in the art *might* construct the device in a particular manner."

The principles which we have above discussed regarding the incorporation of limitations of an original claim as part of the appellee's disclosure formed the basis of the opinion written by the dissenting member of the board. Accordingly, we concur in those views and affirm the dissenting opinion.

The decision of the Board of Patent Interferences is therefore reversed.

Reversed.

JACKSON, Judge, retired, recalled to participate.