45 C.C.P.A.(Patents).

Arthur **LIEBSCHER**, Appellant,

v.

Wilson P. **BOOTHROYD**, Appellee.

Patent Appeal No. 6319.

United States Court of Customs
and Patent Appeals.
April 23, 1958.

Rehearing Denied Oct. 1, 1958.

Olin V. Mitchell (A. Russinoff, Princeton, N. J., of counsel), for appellant.

Allen V. Hazeltine, Thomas M. Ferrill, Jr., and Fordyce A. Bothwell, Philadelphia, Pa., for appellee.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY and RICH, Judges.

JOHNSON, Chief Judge.

This is an appeal from the decision of the Patent Office Board of Patent Interferences awarding priority of invention, as to the two counts hereinafter set forth, to appellee, the junior party in this proceeding.

Involved in this interference are applications No. 310,944, filed September 23, 1952, by Arthur Liebscher, appellant herein, and No. 219,093, filed April 3, 1951, by Wilson P. Boothroyd, appellee. The Liebscher application has been assigned to Radio Corporation of America (known as RCA) and the Boothroyd application to the Philco Corporation. Liebscher has obtained his senior party status by virtue of a parent application No. 4660, filed January 27, 1948, which was copending with his instant application and of which the latter is a continuation.

The present interference grew out of an earlier interference No. 86,761, Webster v. Boothroyd, as a result of a motion brought by RCA, assignee of Webster, for a new interference between the Boothroyd application and Liebscher application No. 310,944. Boothroyd opposed the RCA motion on the ground that the Liebscher application No. 310,944 did not support proposed counts corresponding to counts 3 and 4 [1] of the instant

---

1. Four counts were originally involved in the instant Interference. Counts 1 and 2 were admitted by Boothroyd to be drawn to a broad, generic invention and

interference. This opposition was unsuccessful and the new interference was declared by the Primary Examiner. Since, in his preliminary statement, Boothroyd had alleged no date prior to the effective filing date of Liebscher (the filing date of Liebscher's parent application No. 4660), notice was given by the Patent Office Interference Examiner that judgment on the record would be entered against Boothroyd unless he could show good and sufficient cause why such action should not be taken. Boothroyd, in response to the order to show cause, moved that the case be set down for final hearing to consider the right of Liebscher to make counts 3 and 4 of the interference. The Board of Patent Interferences was of the opinion that the Liebscher application No. 4660 did not support these counts and that, therefore, Boothroyd must prevail as to them. The board was of the opinion that the fact that the language of counts 3 and 4 was original claim language in Liebscher's application No. 310,944 "does not help his priority case, since he must rely upon his application serial No. 4660 to prevail." Neither party has taken any testimony.

The primary issue before us, therefore, is whether Liebscher's application No. 4660 supports counts 3 and 4. We are of the opinion that it does and that the decision of the board must accordingly be reversed.

The counts in issue are as follows:

"3. In color television receiving apparatus for receiving waves including control signals and signals occupying respectively different regularly recurring phases of a transmitted cycle and representative respectively of different component colors of the transmitted image, means for producing an electron beam, *a screen containing color representative phosphors effectively luminescent in different colors when energized under impact of the electron beam,* means for scanning the elec-

tron beam over the screen, said scanning means and *said screen being constructed so that different color representative phosphors are impinged upon by the beam in regular order of recurrence during each scanning line,* and means responsive to control signals in the received waves for controlling the energization of the *different color phosphors* along each separate scanning line to make their energization accord with the different phases of the color representative signals. (Emphasis added.)

"4. In color television receiving apparatus for receiving waves including control signals and signals representative respectively of different component colors of the transmitted image and succeeding each other sequentially in regularly recurring order, means for producing an electron beam, *a screen containing substantially parallel color representative phosphor strips effectively luminescent in different colors when energized under impact of the electron beam,* means for scanning the electron beam over scanning lines extending transversely of the *strips,* and means for controlling the energization of the *different color representative phosphor strips* along each separate scanning line to make their energization accord with the sequence of color representative signals in the received waves, said means including control circuits, means for impressing on the control circuits oscillatory energy produced by scanning action of the electron beam over the *phosphor strips* and connections for impressing on said control circuits control signals derived from the received waves." (Emphasis added.)

The invention disclosed in both the Boothroyd application and Liebscher ap-

the institution of the instant interference as to those counts was accordingly not opposed by him. Priority as to

counts 1 and 2 was subsequently awarded to Liebscher and Boothroyd has not appealed as to that holding.

plication No. 4660 is broadly described as follows in the Boothroyd brief:

"Each of the patent applications involved in this interference teaches and claims color television receiving apparatus comprising a combination of elements including a cathode ray picture tube and circuit means connected thereto and arranged to provide scanning of the electron beam through a conventional television scan raster or pattern over the screen of the tube. Each of these applications teaches the provision of narrow vertical sections, in the face or frontal portion of the picture tube, of such character as to provide selective presentation to the eye of an observer of green light, blue light, and red light, in rapid sequence, as the point of electron beam impingement travels rapidly along one of the substantially horizontal lines of the scan raster from one side of the picture tube screen to the other. Each application further teaches the necessity of 'index' means to regularly signal the position or progress of the electron beam, with respect to the green, blue and red regions, in order to enable certain portions of the described and claimed apparatus combination to regulate the movement of the beam in proper coordination with the application of appropriate sequential intensity control signals to the grid of the tube, which are relied upon to control the intensity of the electron beam to cause it to 'paint in' the correct colors in each elementary area of the reproduced picture."

In its broad aspects, as described above, the two disclosures have common features. The specific area of controversy in this case, however, relates to the screen of the viewing tube. The Boothroyd screen comprises a series of vertical stripes of different phosphor compounds, so selected that a given stripe in the series generates green light, the one adjacent that stripe generates blue light, and the next adjacent stripe generates red light. The series as a whole represents alternate groups of these green, blue and red phosphor stripes.

There is some controversy as to the form of the screen disclosed in the Liebscher application No. 4660. Boothroyd contends that one and only one form is disclosed and that that includes a single, uniform, white phosphor, formed as a continuous layer overlaid by a series of thin vertical filter strips so arranged that groups of green, blue, red and ultraviolet filters alternate throughout the series. When the underlying white phosphor is energized by the impingement of an electron beam, each of the filter strips will allow passage therethrough only of the color light which corresponds to the color of the filter. Liebscher, on the other hand, refers us to certain language in his parent application which, he contends, discloses both the species of screen discussed above as well as the species disclosed by Boothroyd. In the view we take of this case it will be unnecessary to decide whether both species are disclosed; we will assume, arguendo, that the species including the filter strips is the only one disclosed, as urged by Boothroyd. We are of the opinion that both counts 3 and 4 are drawn to an invention broad enough to cover both of these embodiments, i.e., they are generic to said embodiments.

It is to be noted that count 3 includes the following limitation:

"* * * a screen containing color representative phosphors *effectively* luminescent in different colors when energized under impact of the electron beam, * * *." (Emphasis added.)

Count 4 contains a similar limitation:

"* * * a screen containing substantially parallel color representative phosphor strips *effectively* luminescent in different colors when energized under impact of the electron beam, * * *." (Emphasis added.)

Appellant argued below, as he does here, that the word "effectively" broadens these counts and renders them generic to the embodiments shown by Boothroyd and his parent application; that the word "effectively" "really connotes a result or product of some cause or agency, or, * * * a *mental state or attitude resulting from observation* or external impression, as the effect of a picture" (emphasis quoted); that "a cathode ray tube screen made of 'white' light emissive phosphor and color selective filters produces the same result or product as a screen made up of phosphors, each of which is of such composition as to be limited in its reproduction to a single color light." He cites numerous dictionary definitions in support of his contentions.

The board was differently disposed. It viewed the word "effectively" as connoting "actuality, substantiality, or decisiveness, in the verb it modifies" and concluded therefore, that the word "effectively" did not broaden the counts at all. While the board did not quote from any standard dictionary, it did cite several in the course of its opinion.

We are of the opinion that the use of the word "effectively" has so broadened the counts in issue as to make them generic to the two embodiments hereinbefore mentioned.

█ Indiscriminate reliance on definitions found in dictionaries can often produce absurd results. Words are used in many senses and often have diametrically opposed meanings, depending upon the sense in which they are used. One searching for the dictionary definitions of "effectively" or "effect" will find among the numerous definitions listed many which are indisputably inapplicable to the instant use of the word "effectively." But the words in which a claim is couched may not be read in a vacuum. One need not arbitrarily pick and choose from the various accepted definitions of a word to decide which meaning was in-tended as the word is used in a given claim. The subject matter, the context, etc., will more often than not lead to the correct conclusion. In the instant case, the adverb "effectively" modifies the adjective "luminescent." If, as the board contends, the word "effectively" is used here in the sense that it connotes "actuality, substantiality, or decisiveness," we wonder why the word was used at all. For if it were the specific embodiment of the screen (that in which the phosphor *per se* is subdivided into the various color stripes) that was being described in the counts (as the board held), it would have been sufficient for appellant merely to describe the screen element as "luminescent in different colors," for the phosphor materials which *themselves* are representative of the different primary colors are *as such* "actually, substantially or decisively" luminescent. When we consider the rule that all express limitations in an interference count are to be deemed material and cannot be ignored, Ernest J. Sweetland v. Don Cole, 19 C.C.P.A.(Patents) 751, 53 F.2d 709, 11 U.S.Pat.Q. 174; William E. Moore v. Albert E. Greene, 18 C.C.P.A.(Patents) 1317, 48 F.2d 960, 9 U.S.Pat.Q. 198, we are constrained to conclude that the board's relegation of the word "effectively" to a position of redundancy was erroneous. The only realistic conclusion we can reach is that the counts are drawn generically to a structure that will read on both embodiments in question and that the meaning to be ascribed to the word "effectively" is that which appellant urges, viz.,—that the word, in its present context, means "a mental state or attitude resulting from observation or external impression, * * * ; as, the effect of a picture; * * *." Funk & Wagnall's New Standard Dictionary (1938 ed.) [2]

█ Inasmuch as a white phosphor *itself* is not "effectively luminescent in different colors when energized under the impact of the electron beam" (it is

**2.** This is one of the definitions of the noun "effect," from which the adverb "effectively" stems.

*itself,* and without the aid of filter or other elements, luminescent in the color white), the word "phosphors," which precedes the word "effectively" in count 3, and the words "phosphor strips," which precede the word "effectively" in count 4, must refer to the entire screen element, which, in appellant's case, would include the phosphor *per se* as well as the filter strips. This is the only construction possible consistent with the rule that express limitations in an interference count may not be ignored. It is further consistent with the rule that, in an interference, counts are to be given the broadest interpretation which they will reasonably support. Cyril P. Deibel v. Heise & Schumacher, 18 C.C.P.A.(Patents) 907, 46 F.2d 570, 8 U.S.Pat.Q. 162; William E. Moore v. Albert E. Greene, supra; Bocciarelli v. Huffman, 43 C.C.P.A.(Patents) 873, 232 F.2d 647, 109 U.S.P.Q. 385.

If the words "phosphors" and "phosphor strips" are to be defined as above, it is clear that they retain this meaning throughout the counts. Thus, the phrase in count 3 that "different color representative phosphors are impinged upon by the beam in regular order of recurrence during each scanning line" would cover the strip-like sections created by the combination of appellant's white phosphor and filter elements. In similar fashion, the other limitations in count 3 and the similar limitations in count 4 would read upon the phosphor-filter construction of appellant.

But appellee argues that in the board's rejection, it was held that each of the counts contains *two express limitations*

"* * * either of which can only be interpreted as limiting it to a screen structure containing discrete phosphor portions respectively luminescent in different colors, and which prevents it from reading on a screen structure comprising a single over-all coating of white-luminescence phosphor overlayed with a plurality of discrete optical filter elements respectively transmissive of light of different colors."

One of the limitations to which he refers is the provision in each count that the phosphors (phosphor strips) are "effectively luminescent in different colors when energized under impact of the electron beam." The other limitation to which he refers includes the various other statements in the counts of the use of "phosphor strips," "phosphors," "the different color phosphors" and a screen "constructed so that different color representative phosphors are impinged upon by the beam in regular order of recurrence during each scanning line." Appellee contends that since the board relied on these two "grounds" of rejection, and since appellant has assigned as error and discussed in his brief only the first "ground," we must refuse to consider

"* * * any of appellant's contentions to the effect that the counts are generic, rather than specific as the Board held them to be, since it is the established practice of the Court, pursuant to the provisions of U. S. Code, Title 35, Section 144, to consider only those questions specifically mentioned by a party in his notice of appeal and discussed in his brief. Nichols v. Atkinson, 24 CCPA(Patents) 1008, 33 USPQ 82." (Emphasis quoted.)

We are of the opinion that appellee's argument in this regard lacks merit. Appellant has included in his reasons of appeal, no less than eight assignments of error relating to the board's construction of the word "effectively." Note especially the fifth assignment:

"(5) The Board of Patent Interferences erred in not awarding priority of invention to the party Liebscher as to counts 3 and 4 of the interference issue based upon their conclusion that the word 'effectively', as used in said counts, does not broaden them with respect to the limitations in the clause of each of said counts in which it occurs."

Appellant was of the opinion that if the word "effectively" were given its proper scope in these counts, the claims would be broadened and read upon the phosphor-filter structure disclosed in his parent application. As we have pointed out, the use of the word "effectively"

broadens the counts as a whole, including the phrases and words included in the second express limitation that appellee has pointed to. In view of this fact, we do not think that appellant is estopped to present any argument he has presented as to the board's comments on the second limitation referred to. In view of the interrelation between the first and second limitations, appellant's assignment of error of the board's failure to properly define "effectively" put in issue the board's entire rejection on the ground that the Liebscher application No. 4660 does not support the counts.

In the view we have taken of this case, it is unnecessary to consider the further arguments made by the parties to this appeal. As we have construed the claims, Kreidel v. Parker, 25 C.C.P.A.(Patents) 1242, 97 F.2d 171, 37 USPQ 815, relied on by the board, is clearly not in point as there has been no arbitrary subdivision of a single element here, as in that case. Furthermore, we find nothing in Bocciarelli v. Huffman, supra, cited by the board, which is inconsistent with the position we have taken.

For the foregoing reasons, the decision of the board is reversed, as to both counts 3 and 4.

Reversed.