50 CCPA

**Jan A. RAJCHMAN, Appellant,**

v.

**John M. HERBERT and Anthony W. Simpson, Appellees.**

**Patent Appeal No. 6903.**

United States Court of Customs and Patent Appeals.

Feb. 13, 1963.

John V. Regan, Princeton, N. J. (Albert Russinoff, Princeton, N. J., of counsel), for appellant.

Frank L. Durr, Greene, Pineles & Durr, New York City, for appellees.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

ALMOND, Judge.

This is an appeal by appellant, Rajchman, the senior party, from a decision of the Board of Patent Interferences awarding priority to the junior party, Herbert et al. The interference No. 89,-400 involves a pending application and a patent. The application, Serial No. 455,724, was filed September 13, 1954, by Jan A. Rajchman for "Magnetic Storage Devices." The patent, No. 2,825,046, for "Production of Magnetic Material for Use in Computers or Magnetic Memory Systems," issued February 25, 1958, upon an application of John M. Herbert and Anthony W. Simpson, Serial No. 517,223, filed June 22, 1955.

The invention in issue relates to a magnetic memory system in which a perforated sheet of magnetic material (e. g., ferrite) is provided as an element of a storage device for information signals, such as is used in electronic computers.

The holes in the sheet have electrical windings threaded through them so that

when suitable currents flow therein, magnetic flux is produced in the material of the sheet surrounding the hole. The material has two stable magnetic states (*i. e.*, it is bipolar). Thus, a current pulse in one direction produces a magnetic flux of a given polarity or direction in the material surrounding the hole in question. A second current pulse of opposite polarity causes a "reversal" of the flux in the material to its other stable state. In this way, the magnetic material is said to "store information" in storage areas adjacent each hole in that the retained flux polarity or direction is a record of the effect of the last preceding current pulse applied to it. At any given time, such information may be "read out" of the memory system.

One of the problems with an apertured sheet in such a storage device is that current flowing in a selected winding tends undesirably to influence the information stored in an adjacent storage area. Both appellant and appellees recognized this problem and each seeks to separate the core apertures to avoid interference. The approach of appellant Rajchman is to prevent "cross-coupling" interference between the magnetic memory areas by "proper geometrical proportioning of the apertures and shaping of the plates." The Herbert et al. (appellees) approach is to magnetically "isolate" the cores formed in a single sheet of ferromagnetic material by an array of holes surrounding each core hole.

The single count in issue is:

"In a magnetic memory system, a panel member comprising a sheet of ferromagnetic material, said sheet including at least two clusters of holes, each of said clusters of holes comprising a central hole and an array of equally spaced holes surrounding the central hole, said array of equally spaced holes being closely spaced to each other whereby the central hole serves as the opening in a core defined by the ferromagnetic material between the central hole and the array of holes."

The count under consideration is a verbatim copy of claim 1 of the Herbert et al. patent.

Priority was awarded to appellees as a result of the board's sustaining their motion to dissolve on the ground appellant could not make the count because the term "clusters" and the relative phrase "closely spaced" were material limitations unsupported by the appellant's disclosure. It is significant that these words are not to be found in appellees' specification nor was any special meaning attributed to them during the course of the prosecution of appellees' patent.

In support of their motion to dissolve the interference, both before the primary examiner and the board, the appellees contended that the limitation of count 1 that:

"* * * said array of equally spaced holes being *closely spaced* to each other * * *"

did not find support in appellant's disclosure, and that "closely spaced" is a relative term, and reference should be had to the appellees' specification for the meaning thereof. The specification to which special reference was made is:

"For instance, the holes can be uniformly spaced so that each has six equidistant neighbours, and so that the space between the holes is less than the diameter of a hole."

It is pertinent to here point out that an examination of the entire passage of the specification germane to the several aspects of the invention discloses that this "For instance" sentence suggests but one example as to how, "The holes in the matrix *may be disposed at a suitable distance apart;* * * *." (Emphasis supplied.) It is apparent that appellees' concept is not intended to be as restrictive as suggested in the "For instance" sentence. This conclusion is emphasized by the following descriptive language in appellees' specification:

"According to one aspect of this invention the magnetic material con-

sists of thin sheets having a large number of small holes arranged in patterns to suit a particular wiring arrangement, the arrangement being such that each hole having a conductor threaded therethrough is isolated magnetically by adjacent holes to avoid magnetic coupling between adjacent threaded elements."

We perceive no significant distinction in the scope of this description from the broad description contained in the count relative to the spacing between isolating holes. It would seem to us to logically follow that appellees employed the relative term "closely spaced" in their claim to afford adaptation to any suitable arrangement productive of the desired result of isolating the storage aperture "to avoid magnetic coupling between adjacent threaded elements."

■ In denying appellees' motion to dissolve the interference, the examiner applied the well settled rule that the terms of a count should be given the broadest meaning which they reasonably support. Deibel v. Heise and Schumacher, 46 F.2d 570, 18 CCPA 907. The examiner stated that:

" * * * while 'closely spaced' is a relative term and is not exact, it is not so ambiguous as to necessitate reference to the Herbert et al. specification for the meaning thereof. Therefore, there is nothing repugnant to the ordinary definition of this term in applying it to Fig. 7d of the Rajchman disclosure. It is held to be an entirely reasonable application of this limitation to say that the holes in plate 4 of Rajchman's Fig. 7d are 'equally spaced holes being closely spaced to each other.' "

In reversing the examiner, the board stated:

"Were it proper here to construe 'closely spaced' by itself, we would be hesitant to deny Rajchman's argument, however, we feel that such a construction lifts the phrase from its context."

As pointed out hereinabove, the board found that the term "clusters" and the phrase "closely spaced" relating thereto were material limitations unsupported by appellees' disclosure, deeming it proper to consider "closely spaced" in context "as referring to or as a *restatement of the clustering feature.*" (Emphasis added.)

In support of its interpretation of the count and the significance attributed to "cluster," the board resorted to dictionary definition of that word. We do not deem it necessary to launch upon a detailed discussion of the reasoning advanced by the board productive of its conclusion. Suffice it to say, we do not ascribe to the term "clusters" that "unique significance" accorded to it by the board, thus rendering irrelevant, in our judgment, the pursuit of lexicographical discussion. The count defines "cluster" as "comprising a central hole and an array of equally spaced holes surrounding the central hole." It seems clear to us that appellant's disclosure shows this.

In Liebscher v. Boothroyd, 258 F.2d 948, 46 CCPA 701, this court said:

"Indiscriminate reliance on definitions found in dictionaries can often produce absurd results. * * * But the words in which a claim is couched may not be read in a vacuum. One need not arbitrarily pick and choose from the various accepted definitions of a word to decide which meaning was intended as the word is used in a given claim. The subject matter, the context, etc., will more often than not lead to the correct conclusion."

The count requires that the holes be "closely spaced to each other whereby the central hole serves as the opening in a core defined by the ferromagnetic material between the central hole and the array of holes." Since "closely" is a relative term, it is proper to consider the "whereby" clause as defining the term. This clause indicates just how close the spacing should be, so that it is unnecessary to refer to the appellees' specifica-

tion for a definition. The count not being ambiguous, it is not necessary to refer to the specification in which it originated. The appellant's specification supports the "whereby" clause, inasmuch as the function of serving as a core around a hole within an array of apertures is the same in appellant's disclosure as in appellees'. The holes are "closely spaced" in that they are close enough to be effective. The competing objectives of close spacing of core holes to provide the most cores per sheet of ferromagnetic material, close spacing of isolating holes to minimize "cross-coupling," wide spacing of holes to provide sheet strength, etc., must be balanced. Nothing in the count precludes the pattern of holes shown by appellant which is merely a design variation over the specific example illustrated in appellees' disclosure.

█ Laying the relevant elements of the two structures side by side; according the terms of the count the broadest meaning which they reasonably support; finding no ambiguity therein sufficient to warrant resort to consideration of the disclosure of the patent, and indulging the "reasonable presumption" that the inventor "intended to patent his invention broadly," it is our opinion that the appellant's application supports the count in issue. Kean v. Wheelan, 102 F.2d 824, 26 CCPA 1010; Kirby v. Clements, 44 App.D.C. 12, 1915 C.D. 163.

█ In the tribunals below the appellees moved to shift the burden of proof asserting entitlement to the benefit of the filing date of their British application, filed June 24, 1954. The record discloses, however, that appellees did not file claim for priority before the issue of their patent, on February 25, 1958. The board held this matter moot in view of its findings as to appellant's right to make the count in issue. Our decision however on the issue relating to the count revives the matter.

The second paragraph of 35 U.S.C. § 119 reads in part:

> "No application for patent shall be entitled to this right of priority unless a claim therefor and a certified copy of the original foreign application, specification and drawings upon which it is based are filed in the Patent Office before the patent is granted, * * *."

Rule 55 of the Patent Office Rules of Practice requires that the priority claim be filed before the final fee is paid.

Inasmuch as appellees did not meet the requirement of 35 U.S.C. § 119 by claiming priority before the patent was granted nor claim priority before payment of the final fee, they are not entitled to rely on the foreign filing date for convention priority.

For the foregoing reasons, we reverse the decision of the Board of Patent Interferences in awarding priority of invention of the subject matter in the count in issue to John M. Herbert and Anthony W. Simpson.

Reversed.